# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| CHAD HERRERA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SALT LAKE CITY CORPORATION,<br><br>Defendant. | **MEMORANDUM DECISION and ORDER**<br><br>Case No. 2:08-cv-00732-TC<br><br>Judge Tena Campbell |

Chad Herrera has brought a Title VII employment discrimination claim based on race and national origin and a breach of contract claim against Salt Lake City. Because Mr. Herrera cannot rebut the city's legitimate business reason for his termination, the court grants summary judgment for Salt Lake City on the employment discrimination claim. The court declines to exercise supplemental jurisdiction over Mr. Herrera's breach of contract claim and dismisses this claim without prejudice.

## BACKGROUND[1]

Mr. Herrera was hired by Salt Lake City as a Wastewater Plant Operator in September 2001, a pay class 113 position. After six months of training in this position, Mr. Herrera was promoted to the 115 pay class in the same position. In February 2006, he and three other wastewater plant operators were employed as Wastewater Plant Operators in the 115 pay class (the 115 position).

Mr. Herrera is of Mexican and American Indian descent. The other three employees in

---

[1] Because this is a motion for summary judgment, the court views all of the facts in the light most favorable to Mr. Herrera, the non-moving party.

the 115 position were Chris Hall, a white Caucasian man; Linda Mecham, a white Caucasian woman; and Nelson Marcial, a man of Mexican descent. Another employee, Steven Fleck, a white Caucasian man, was also employed as a Wastewater Plant Operator in the 118 pay class (the 118 position) but had essentially the same job responsibilities as those in the 115 pay class. Salt Lake City had allowed Mr. Fleck to remain in the 118 position when it was eliminated in January 2002.

In February 2006, Salt Lake City changed the 115 position to a one-year maximum training position. As part of the change, Salt Lake City required the four employees then working in the 115 position to qualify for a promotion to the 119 position within the following year by obtaining a Commercial Driver's License (CDL) and a Class II Wastewater Treatment Certificate ("Level Two Certificate") from the State of Utah. Because Mr. Fleck was employed at the 118 level, not the 115 level, he was not required to obtain the additional qualifications. Of the four employees at the 115 level, only one, Mr. Hall, qualified for the 119 position. Ms. Mecham failed to obtain both a CDL and a Level Two Certificate and resigned. Mr. Marcial failed to obtain a Level Two Certificate and resigned.

Mr. Herrera had obtained his CDL prior to his employment with Salt Lake City. He took the test for his Level Two Certificate in April 2006 and November 2006 and failed both times. The city allowed Mr. Herrera one more opportunity to take the test, but in April 2007 he again failed. He refused to resign, and the city terminated his employment.

Mr. Herrera claims that he was subject to disparate treatment because of his race and national origin based on the fact that Mr. Fleck was not required to qualify for the 119 position.

ANALYSIS

A plaintiff in an employment discrimination action can show discrimination by proving that his employer treated a similarly situated employee differently. Miller v. Auto. Club of New Mexico, Inc., 420 F.3d 1098, 1115 (10th Cir. 2005). "In the Title VII context, this court applies the three-part burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)." Etsitty v. Utah Transit Auth., 502 F.3d 1215, 1220 (10th Cir. 2007). First the plaintiff must make prima facie case of disparate impact employment discrimination by the employer. Id. Once the plaintiff has made this initial showing, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." Id. (quotations omitted). The employee then has the burden to show that the employer's proffered reasons for the adverse action are pretextual. Id.

Prima Facie Case

A plaintiff makes a prima facie case of employment discrimination based on disparate treatment by showing that (i) he is a member of a protected class; (ii) that he was qualified for the job; (iii) that he was rejected despite being qualified; and (iv) that similarly situated employees outside the protected class were treated differently. Equal Employment Opportunity Comm'n v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992).

There is no dispute that Mr. Herrera is a member of a protected class based on his race and his national origin. Although Mr. Herrera was not qualified for the 119 position, he was qualified for the 115 position that he held at the time of his termination. In spite of being qualified for the 115 position, he was terminated. Mr. Fleck was allowed to continue his employment even though he did not obtain a Level Two Certificate. In order to determine

3

whether Mr. Herrera was treated differently from a similarly situated employee outside the protected class, the court must consider whether Mr. Fleck and Mr. Herrera were similarly situated.

"Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1120 (10th Cir. 2007) (citations omitted); see also MacKenzie v. Denver, 414 F.3d 1266, 1277 (10th Cir. 2005). Employees are similarly situated for Title VII purposes if they have the same job responsibilities. Miller, 420 F.3d at 1115. In Miller, the plaintiff argued that she was paid less than male employees and as proof pointed to the wage earned by the man who accepted the post that replaced her position. Id. The court held that the employees were not similarly situated because the male employee performed additional duties for the higher wage. Id.

Salt Lake City maintains that because Mr. Fleck held the 118 position and Mr. Herrera held the 115 position, that they were not similarly situated. But the only difference in their responsibilities was that Mr. Herrera was required to have a CDL and Mr. Fleck was not. This meant that in spite of Mr. Herrera's lower position and pay, Mr. Fleck could not perform all of the duties that Mr. Herrera performed. But the need for a CDL in either position was limited. Although Mr. Herrera was occasionally required to drive a dump truck off city property, which required a CDL, his responsibilities at the wastewater treatment facilities were in all other ways the same as Mr. Fleck's. Therefore, drawing all inferences in favor of Mr. Herrera, a reasonable jury could conclude that Mr. Fleck and Mr. Herrera were similarly situated and Mr. Herrera was subject to disparate treatment: that is, only Mr. Herrera was required to meet the requirements for

the 119 position.

Mr. Herrera has stated a prima facie case of employment discrimination based on disparate treatment. The court next considers whether Salt Lake City has proffered a legitimate business reason for its termination of Mr. Herrera.

Legitimate Business Reason

Salt Lake City argues that its legitimate business reason for terminating Mr. Herrera's employment was that Mr. Herrera failed to meet the new requirements Salt Lake City imposed on those who held the 115 position. Specifically, he was unable to obtain a Level Two Certificate. The city provided Mr. Herrera with sample study questions and gave him an additional opportunity to take the test beyond the year deadline. But when he could not obtain the certification, the city terminated him.

Mr. Herrera can overcome the Defendant's motion for summary judgment only if he shows that this legitimate business reason was pretextual.

Pretext

A plaintiff can show pretext "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence. . . ." MacKenzie, 414 F.3d at 1278 (citations omitted). "Evidence of pretext may include prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1308 (10th Cir. Colo. 2005)(citations omitted). The court must "consider the facts as they

appeared to the person making the decision, and [the court does] not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment." Riggs, 497 F.3d at1118-1119.

Mr. Herrera claims that the fact that Mr. Fleck, a white Caucasian man, was allowed to continue his employment without obtaining the Wastewater II Operator certification is sufficient evidence of pretext. The city claims that it did not require Mr. Fleck to obtain the Level Two Certificate because it imposed the requirement with its future needs in mind and Mr. Fleck was nearing retirement.

Mr. Herrera does not provide any other evidence besides Mr. Fleck's race to show that discrimination occurred. Specifically, he does not allege that his supervisor or coworkers degraded him in any way because of his race or that Salt Lake City has a pattern and practice of discriminating against employees because of their race, nor has he shown any disturbing procedural irregularities in the city's decision to terminate him after he failed his certification test. Salt Lake City chose not to require Mr. Fleck to meet the same standard as Mr. Herrera because Mr. Fleck was nearing retirement and had been with Salt Lake City for a long time. This reason does not prove that the imposition of the new requirements was subjective and done for the purpose of discriminating on the basis of race or national origin. Without some additional evidence of discrimination by Salt Lake City, Mr. Herrera cannot show that Salt Lake City's proffered reason for his termination was pretextual.

Breach of Contract

Mr. Herrera claimed that Salt Lake City breached its employment contract with him by not attempting to reassign him to other available jobs as required by a union contract between

Salt Lake City and the American Federation of State, County, and Municipal Employees, Local 10004 (AFSCME).  Salt Lake City urges the court not to exercise supplemental jurisdiction over the breach of contract claim.  "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [above] if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Exum v. United States Olympic Comm., 389 F.3d 1130, 1138 (10th Cir. 2004).  The court has granted summary judgment on Mr. Herrera's federal claim and declines to exercise supplemental jurisdiction over his breach of contract claim.  Therefore, the court dismisses Mr. Herrera's breach of contract claim without prejudice.

ORDER

The court GRANTS Salt Lake City's motion for summary judgment on Mr. Herrera's claim for disparate treatment employment discrimination.  (Dkt. No. 15.)  The court also GRANTS Salt Lake City's motion to dismiss Mr. Herrera's breach of contract claim.  (Dkt. No. 18.)  The court DENIES as moot Salt Lake City's motion for summary judgment on the breach of contract claim.  (Dkt. No. 15.)

DATED this 10th day of November, 2010.

BY THE COURT:

_____
TENA CAMPBELL
Chief Judge